UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**ROBERT DAVID REASER, II,**

    **Plaintiff,**

v.                                                                            **CIVIL ACTION 2:14-cv-29436**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 12) and Brief in Support of Defendant's Decision (ECF No. 13).

### Background

Robert David Reaser, II, Claimant, protectively applied for Supplemental Security income (SSI) under Title XIX of the Social Security Act and disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act on January 14, 2011, alleging disability beginning January 1, 2008. The claims were denied initially on April 20, 2011, and upon reconsideration on August 1, 2011. Claimant filed a written request for hearing on September 7, 2011. On March 8, 2013, an Administrative Law Judge (ALJ) held a video conference. Claimant appeared in Parkersburg, West Virginia, and the ALJ presided over the hearing from Charleston, West Virginia. After continuing the hearing, the ALJ held a second video hearing. Claimant appeared via video in Parkersburg, West Virginia, and the ALJ presided over the hearing from Charleston, West Virginia. In the Decision dated June 14, 2013, the ALJ determined that Claimant was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. On August 12, 2013, Claimant filed a Request for Review of Hearing Decision of the ALJ because

the ALJ's decision was contrary to the medical evidence and regulations (Tr. at 48). On October 7, 2014, the Appeals Council denied Claimant request for review of the ALJ's decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. 404.1520(f) (2014). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of January 1, 2011, and meets the insured status requirements of the Social Security Act through December 31, 2015 (Tr. at 54). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic prostatitis/pelvic pain syndrome, urinary refractory urgency and frequency, substance abuse, bipolar disorder, attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning and personality disorder (Tr. at 55). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity to perform light work[1] (Tr. at 57). The ALJ concluded that Claimant could not perform past relevant work (Tr. at 65). On this basis, benefits were denied (Tr. at 66-67).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere

---

[1] The ALJ found that Claimant can perform light work except he has moderate limitations in the ability to make judgments on complex work-related decisions; interact appropriately with supervisors and co-workers; and respond appropriately to usual work situations and to changes in a routine work setting. The claimant should not perform work outdoors. He requires work inside with readily available restroom facilities (Tr. at 57).

>scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

### Claimant's Background

Claimant is married and lives with his wife and their two children and has two other children with his first wife. He completed the ninth grade (Tr. at 57). He had a driver's license but it was revoked due to child support payments. Claimant has a history of alcohol and drug use and smokes one-half pack of cigarettes a day (Tr. at 57-58).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in failing to follow Social Security Ruling 02-2p, which resulted in an unsupported step two finding that his interstitial cystitis was not a severe impairment. Specifically, Claimant argues that a medical expert who testified at both of his hearings was incorrect about the evaluation criteria for interstitial cystitis. Also, Claimant asserts that the ALJ's residual functional capacity assessment does not consider the impact of his mental impairments on his functional ability as required by Social Security Ruling 96-8p (ECF No. 11). Defendant asserts that substantial evidence supports the ALJ's finding that interstitial cystitis was not a severe

impairment (ECF No. 13). Defendant argues that the ALJ's decision would not have changed due to a finding of severe interstitial cystitis, therefore, any failure by the ALJ in this regard was harmless error that does not justify a remand in this case. Defendant also argues that the ALJ's residual functional capacity assessment accounted for all of Claimant's mental functional limitations that were supported by the record.

## Medical Record

The Court adopts the medical record findings asserted by Claimant and Defendant to the extent as follows (ECF Nos. 12 & 13):

> On January 14, 2011, Plaintiff went to the emergency room with complaints of generalized abdominal pain (Tr. 725-76). An abdominal CT showed a bladder wall that was very minimally thickened, possibly secondary to incomplete distention, and early atherosclerotic calcification of the abdominal aorta (Tr. 733). Claimant was prescribed Lortab, Elmiron, Amitriptyline, and Hydroxin, and advised to follow up with a primary care physician (Tr. 731).
> On January 19, 2011, Claimant presented as a new patient to Robert Waskey, FNP BC, at Mid-Ohio Valley Medical Group (Tr. 721). Claimant reported that he was diagnosed with interstitial cystitis in 2008 by a urologist in Virginia (Tr. 721). Claimant reported that he was going to the bathroom 15 to 30 times daily, and he denied having blood in his urine (Tr. 721). Claimant stated that Vicodin was the only thing that helped his pain (Tr. 721). Mr. Waskey referred Claimant to Ruby Memorial in Morgantown for further evaluation (Tr. 723).
> On March 3, 2011, Stanley Zaslau, M.D., a urologist, evaluated Claimant as a new patient (Tr. 761). Claimant complained of urinary frequency/urgency 20 to 25 times per day and pelvic pain (Tr. 761). Dr. Zaslau noted that a prior cystoscopy and urodynamics study showed that Claimant had a small capacity bladder without other disease present (Tr. 761). On examination, Claimant's abdomen was free of masses, tenderness, or hepatosplenomegaly (Tr. 762). A urine test was negative for blood and protein (Tr. 762). Dr. Zaslau diagnosed refractory urgency and frequency (Tr. 762). He noted that Claimant was an excellent candidate for an InterStim sacral neuromodulation office perc procedure (a therapy targeting a communication problem between the brain and the nerves controlling the bladder), and he requested

Medicaid coverage for it (Tr. 762). On August 1, 2011, Claimant told Dr. Zaslau that he had urinary frequency of 10-15 times per day, and Dr. Zaslau noted that Claimant's bladder was soft and non-tender (Tr. 1018). Dr. Zaslau again recommended the InterStim procedure, subject to Medicaid coverage (Tr. 1018).

On September 15, 2011, Melischa Cowdery, FNP-BC, at MedExpress Parkersburg indicated that Claimant presented with complaints of abdominal pain and a genital problem (Tr. 888). Claimant reported that he had to catheterize himself in order to urinate, and felt like he might have injured himself while doing so (Tr. 888). Nurse Cowdery prescribed Flavoxate and instructed Claimant to drink plenty of fluids, use lubricant while catheterizing himself, and follow up with his urologist (Tr. 889).

On October 11, 2011, Claimant saw Floresita Edora, M.D., for a follow-up appointment (Tr. 1063). Claimant reported that he had chronic pain and had to catheterize himself (Tr. 1063). He requested a refill of his pain medications (Tr. 1063). Dr. Edora referred Claimant for an abdominal ultrasound of his bladder, and gave Claimant a prescription for Loracet (Tr. 1063).

On October 16, 2011, Claimant underwent an ultrasound of his full bladder, which calculated the volume at 360 cc (Tr. 921, 1066). The study indicated that Claimant was unable to spontaneously void, which appeared to be a functional process (Tr. 921, 1066).

On November 17, 2011, Claimant returned to Dr. Zaslau's office for a follow-up appointment following an office perc InterStim trial (Tr. 1021). Claimant reported that he was 50% better, which Dr. Zaslau characterized as a successful response (Tr. 1021). Dr. Zaslau indicated that Claimant was a candidate for an InterStim I/II procedure (Tr. 1021).

On December 26, 2011, Claimant presented to MedExpress with complaints of abdominal pain (Tr. 891). Claimant stated that his Percocet was stolen and that he had reported the theft to the police (Tr. 891). Claimant was diagnosed with abdominal pain, unspecified, and prescribed 20 Lortab pills with no refills (Tr. 892). On January 20, 2012, Claimant returned to MedExpress with complaints of urinary frequency with no blood in the urine or burning (Tr. 894). Claimant was prescribed Doxycycline and Ultracet (Tr. 895).

On October 20, 2012, Dr. Zaslau stated on a Bladder Problem Residual Functional Capacity Questionnaire that Claimant's diagnoses were chronic prostatitis and pelvic pain syndrome (Tr. 898). He stated that Claimant's prognosis was stable, and listed Claimant's symptoms as urinary frequency and urgency, and pelvic pain (Tr. 898). Dr. Zaslau noted clinical findings of prostate tenderness and low back pain (Tr. 898). Dr. Zaslau estimated that

>Claimant needed to urinate 10 to 30 times per day, and opined that his symptoms were severe enough to constantly interfere with his attention and concentration (Tr. 899). Dr. Zaslau noted that Claimant did not have urinary incontinence, and that Claimant's symptoms were improved with pain and bladder medications (Tr. 899). Dr. Zaslau opined that Claimant was incapable of tolerating even "low stress" jobs, and that he would need to take an unpredictable number of unscheduled restroom breaks during the workday (Tr. 900). Dr. Zaslau opined that Claimant would miss more than four days of work per month (Tr. 902).
>   On March 7, 2013, Dr. Zaslau indicated that he and Claimant had discussed the possibility of Claimant undergoing diagnostic cystoscopy with injection of Botox into the bladder (Tr. 1265). Dr. Zaslau noted that Claimant was still unable to work due to his pain and urinary symptoms (Tr. 1264).
>   Dr. Brendemuehl testified at the hearing that the medical evidence of record included a diagnosis for interstitial cystitis but that Claimant had not undergone a biopsy to confirm the diagnosis. She noted Dr. Zaslau's opinion in Exhibit 34F did not include a diagnosis of interstitial cystitis but rather listed chronic prostatitis and pelvic pain syndrome. Dr. Brendemuehl stated the record was missing information, including treatment records between November 2011 and March 2013.

## Discussion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

Social Security Ruling 02-2p

The Social Security Act Policy Interpretation Ruling[2] concerning the development and evaluation of interstitial cystitis (IC) in disability claims states that "The diagnosis is one of exclusion. A physician must rule out other conditions before making a diagnosis of IC because there is currently no definitive test to identify IC." A diagnosis of IC is based on the presence of some or all of the following:

- Presence of urinary urgency or frequency (day and/or night), either singly or in combination;
- Pain in the bladder and surrounding pelvic region;
- Suprapubic tenderness on physical examination;
- Glomerulations (pinpoint bleeding caused by recurrent irritation) on the bladder wall after hydrodistention on cystoscopy;
- Hunner's ulcers on the bladder wall after hydrodistention on cystoscopy; and,
- Absence of other disorders that could cause the symptoms.

Diagnostic tests used to identify or exclude other disorders include urinalysis, urine culture, urine cytology, cystoscopy, biopsy of the bladder wall, and, in men, culture of prostate secretions.

Hearing Testimony

At the hearing on March 8, 2013, Judith Brendemuhl, a medical expert, testified that a diagnosis of IC "requires a bladder biopsy confirmation" (Tr. at 82). Dr. Brendemuhl testified that when reviewing the records of Stanley Zaslau, M.D., Professor and Chief Urology Residency Program Director, Division of Urology at West Virginia University Healthcare, "the current record indicates refractory urgency and frequency, male IC, which stands for interstitial cystitis. And yet, the RFC that he filled out – he being Dr. Zaslau—filled out in [exhibit] 34F – his diagnoses there are chronic prostatitis and pelvic pain syndrome." (*Id.*) Claimant testified that he was diagnosed with IC in Fredericksburg, VA (Tr. at 91). The ALJ continued the hearing for "a psychological

---

[2] Social Security Ruling 02-2p was effective from November 5, 2002, until March 18, 2015, when it was rescinded and replaced by Social Security Ruling 15-1p. At all times relevant in the current proceeding, SSR 02-2p was in effect.

consultative examination with a residual functional capacity assessment, a complete mental status exam, WAIS- IV and RAT-IV. Examiner should review the psychological records in the file. Also, the attorney is to submit the cystoscopy.. report… test results, also, the urodynamic study" (Tr. at 92).

At the second hearing on June 3, 2013, Claimant testified that for his IC he has "had hydration where they stretch the bladder. They – and injected dye to coat the lining of the bladder, medication and that sorts" (Tr. at 103). When asked if he has seen any specialists for IC, Claimant testified to seeing Dr. Zaslau. Dr. Brendemuhl testified that based upon reviewing the exhibits on the record, specifically the "records from Neurological Associates in Fredericksburg where there is a mention of LUTS, lower [] urinary tract symptoms," that claimant "primarily, has complaints of longstanding urinary urgency and frequency "(Tr. at 114). Dr. Brendemuhl testified that the "Virginia urologist" who diagnosed Claimant with IC did not have the bladder wall biopsies and pathology that a diagnosis requires. (*Id.*) She consistently states that IC diagnosis requires a biopsy of the bladder wall.

Claimant's Attorney asked Dr. Brendemuhl to explain the difference in her opinion from the opinion of Terry Carr, D.O., at Marietta Memorial Hospital, who in the record of the cystoscopy "had indicated that his finding of the bladder capacity was, in his terms consistent with IC" (Tr. at 117, 733). Dr. Brendemuhl's testimony was that "Again, the diagnosis of IC requires a pathological diagnosis of the bladder wall." (*Id.*) When Claimant's Attorney asked her straightforward "is it your opinion then, or position, that there is a definitive test that can be done to determine if an individual has IC?" Dr. Brendemuhl again testified that "There is a pathologic diagnosis that's made through a biopsy of the bladder wall, yes" (Tr. at 118). Claimant's Attorney asked Dr. Brendemuhl if she was "familiar with the 2002 Social Security policy interpretation on

IC that specifically states that there is no definitive testing that can diagnose the condition?" Dr. Brendemuhl testified that "I'm just telling you what board certified urologists that I work with tell me about the diagnosis when I refer the patients to them." (*Id.*)  When asked if she treats patients with IC she stated "I don't treat them specifically first time, but I provide the medications once they've been evaluated" (Tr. at 119).  Although SSR 02-2p states that cystoscopy with hydrodistention of the bladder is the test currently used to aid in the diagnosis of IC, it also states that "Cystoscopy should not be purchased to establish a diagnosis of IC because it is an invasive procedure."

Although Dr. Zaslau and Dr. Carr indicate that Claimant has IC, the ALJ's pain analysis finds that the evidence does not support the Claimant's assertion of severe of pain or frequent need to void because the she relied in part on Dr. Brendemuehl's position that "the record does not support a diagnosis of interstitial cystitis" (Tr. at 60).  Then when discussing the opinion evidence, the ALJ again relied in part of Dr. Brendemuel's position that the diagnosis for IC "requires a bladder wall biopsy and pathology, which is not in the record" (Tr. at 61).

The ALJ gave partial weight to the opinions of Dr. Brendemuehl by finding that Claimant be restricted to light work instead of adopting Dr. Brendemuel's position that Claimant "had no exertional limitations" (Tr. at 62).  The ALJ found that evidence supported the necessity for Claimant "to have ready access to a restroom facility." (*Id.*)  In the five step evaluation process, the ALJ did not find Claimant to have severe IC or a Genitourinary Impairment (Tr. at 55).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.  Therefore, the Court recommends that the presiding District Judge remand this matter for further consideration.

Conclusion

The undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to consider whether Exhibit 11F, when reviewed with the entire record satisfies the criteria for Listing 4.02 .

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 12) and **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 13), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge

Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: February 1, 2016

Dwane L. Tinsley
United States Magistrate Judge